Okay, let's begin in the United States v. Williams with the appellant. Yes, sir. May it please the court, counsel? I'm Eric Clacky with the Federal Public Defender's Office in the Middle District of North Carolina on behalf of Mr. Williams. Your Honors, it's not our contention that Hood was wrongly decided under the law at the time, simply that, in light of developments since then, it no longer bars relief in a case such as Mr. Williams. You're saying Hood's bad law, but it wasn't bad law then? Is that what you're trying to say? It's bad law now? At the time it was decided, it was, I would argue, a correct application of the law, but things have changed. The Supreme Court has given us more guidance about how the statute is to be interpreted, and the Sentencing Commission has specifically What about the proposition that the only way we can change a panel decision like Hood was, is by an in-bank case, or the Supreme Court ruling otherwise, or maybe Congress overruling it, but one panel can't change another panel decision if you're asking us to say that Hood is not good law anymore. And if there had been no inter- That's a pretty settled rule in the Fourth Circuit. One panel can't throw out another panel's decision. That is a settled rule in this circuit. That's a good rule. And it is, but the exception to the rule is intervening changes in the, for example, the guidelines or the statute. So you're saying the Guideline Commission can throw our precedent out the door? They haven't thrown it out the door, but- Well, that's what I'm trying to say, that Hood is not good law. Its rationale has been undercut by subsequent changes- By the guidelines, though, but the guidelines. And by the Supreme Court. And by the Supreme Court. Well, that's a stretch. You're talking about the Dillon case or the Freeman case. Well, both the Freeman and the Dillon case. In Freeman, the court, in the best information we have, as the D.C. Circuit recognized in N. Ray Seale's case, the plurality's more expansive view of what the phrase based on means is the best we have. And it's not a case like the Supreme Court's decision some years ago in Marks, where you have to look at what's the narrowest interpretation that five justices concurred in, in support of the result. That's not what happened in Freeman. And so the D.C. Circuit was correct to recognize that they could look to the plurality's more expansive definition of that phrase based on, which allows, which says that based on means is the change guideline part of the analytic- The N. Ray Seale case goes the other way. That's another circuit, and that decision's contrary to Hood. If we give you that, the D.C. Circuit still can't overrule the Fourth Circuit. The D.C. Circuit cannot. I mean, the Supreme Court could resolve the conflict, but what happened here is the Sentencing Commission said it was going to resolve the conflict. And the Sentencing Commission is not the Supreme Court. The Sentencing Commission is not the Supreme Court. It's not our in-bank court. And it's not this court's in-bank court. I mean, this is a strange setting anyway. I mean, we've got all these students here. We've got the public defender here arguing for his client. And the government basically agreeing with him. And we have appointed people. Is that in this case or the other case? It's this case, Your Honor. It's in this case, as amicus, to support the district judge, right? That's correct. And Mr. Hamilton and I have never sat at the same table before. But the district judge was abandoned by the U.S. attorney. And we've got amicus counsel in here supporting the argument of the position of the district judge. We appoint. We're asked to get in the case. And they're all good lawyers. And we're glad to have you. But that just sets the table a little bit. Go ahead. If there hadn't been those intervening changes, I couldn't stand here and argue that this panel of this court can overrule it. As the court has said, that's settled law. That one panel can't overrule another. But when there are intervening changes in the law, intervening decisions from the Supreme Court, or intervening changes in the law that's being interpreted, And I would ask the court to think back some years ago to the Supreme Court's decision in Coon. After Coon, which talked about downward departures under the guidelines, a case came before this court, United States v. Brock. And in Brock, based on that intervening Supreme Court, this court overruled its prior precedent that said you can't have a downward departure based on extraordinary acceptance of responsibility. So this court has recognized that subsequent guidance from the Supreme Court can be part of the intervening change in the law that allows one panel to Nobody debates the Supreme Court can overrule us. Right. But the Supreme Court was considering a different case from a different circuit. That's right. There's an intervening change in the law from the Supreme Court that obviously controls. Let me ask you this. And we have that. Let me ask this, Mr. Mackey. When your man pleaded in 2008, his sentence range was 130 to 162 months. Right. Was his sentence based on that sentencing range? That was one of the relevant factors in the court's Was it based on that sentencing range? The sentence he got based on that sentencing range? As based on is defined in the plurality opinion in Freeman, yes, that sentencing range was one of the relevant factors. And Amicus argues that the regular guideline range is irrelevant. They use the word irrelevant. We would argue that that's not the case. Even when you have someone who has a guideline range below, completely below a mandatory minimum, the district court is still aware of that. It's still in the pre-sentence report. It's still announced on the record. And it still informs the court's decision about the relative culpability of the individual. And when the court grants a substantial assistance motion, it is allowed to weigh the relative culpability as well as weigh the value of the assistance. When the Sentencing Commission says, the sentencing range is this, but for certain quantities of drugs, there's going to be a, Congress says, there's going to be a minimum sentence. Who do you think prevails in a question of authority between Congress and the Sentencing Commission? Well, certainly Congress prevails. Right. Congress created the Sentencing Commission. That's right. Congress passed the legislation that lays out its authority and what it can do and what it can't do. Notably, what the Supreme Court noted in both Freeman and Dillon is that it was Congress that said in 3582C2 that the statute, 3582C2, requires district courts to follow the Sentencing Commission's guidance about implementing retroactive guideline amendments. And so that's, we're talking about a comprehensive scheme that Congress created. They created the Sentencing Commission as part of it. They gave the Commission the authority to amend the guidelines, to designate ones that are retroactive. And Congress specifically said in the statute that the district court is to follow the Sentencing Commission's policy statements about whether a reduction is available or not. Even in the face of a directive to the contrary established by Congress through a statute? Well, it's not a directive to the contrary that takes effect once the government has filed a substantial assistance motion, which is the limited class of cases we're talking about. That's right, but the reason there can be a reduction is because Congress has said there can be a reduction under this narrow circumstance. Right, under substantial assistance. Because of substantial assistance, that's right. And they don't give any other authority for the reduction from that mandatory minimum. Well, there's safety boundaries, other things. That's right. But, go ahead, go ahead. But Congress specifically said in the statute, and the Supreme Court has interpreted the statute as saying, district courts are to follow the Sentencing Commission's policy statements about whether a reduction is available in the case of these retroactive guideline amendments. This isn't a case of a battle between the Sentencing Commission and Congress. This is how a comprehensive sentencing system should be interpreted so that it functions in the way that it's intended to under the Sentencing Reform Act. Congress received this amendment six months in advance of its effective date, and Congress certainly knows how. As it demonstrated 20 years ago with the crack powder amendment that it rejected, Congress knows how to look at what the Sentencing Commission has said and say, no, that's not what we want. And that's not what Congress did here. Congress allowed this amendment to go into effect when it was clear from the Sentencing Commission what the intended result was, when it was clear that the Sentencing Commission intended to adopt the approach that the D.C. Circuit had taken in N. Ray Seale's case, and that the Third Circuit had taken in Savino. But you're saying that Congress then overruled the Hood case. Well, Congress could change the statute. Well, you're saying they did. That's what I just heard. By their inaction, they overruled our precedent in the Hood case. Their inaction is one of the intervening circumstances, yes. Well, what's your best argument? Is it the Supreme Court and Dillon and Freeman, or is it the fact that the Sentencing Commission issued these policy statements in Amendment 780, and Congress didn't bother to mess with it? Because 3582C says that the District Court must follow the Sentencing Commission's policy statement, then I wouldn't contend that one is greater than the other. They are both intervening circumstances. And it's not a matter of overruling Hood on what the law was at that time. The law that was being interpreted has changed. There's another exception to our panel precedent rule in that the Sentencing Commission did overrule it. Well, if a panel has interpreted the guidelines in a certain way, and then the Sentencing Commission changes those guidelines, then a subsequent panel can interpret that new version of the guidelines. And that has happened a number of times before this and other courts, and that's what happened here. It's important to recognize that Hood isn't just based on an interpretation of the statutes. The Court in Hood repeatedly cites to both 1B1.10 and its instructions about how to calculate whether the guideline range has been reduced by the amendment, and to 5G1.1, which is the latter step in the process that says, OK, then you look at the mandatory minimum. And the Sentencing Commission changed the instructions about how to go through that process and said, you don't look to 5G1.1 anymore. And in Hood, the Court specifically and repeatedly cited both 1B1.10's instructions about how to go through that process, and 5G1.1's specific instruction about the intersection between the guideline range and the mandatory minimum. Hood was looking at both of those and was interpreting those guidelines as well. And those guidelines have changed. And so, it's not a matter of overruling Hood, it's a matter of recognizing that Hood has been undermined or overtaken by subsequent developments. And it's for that reason that we contend... You made all those arguments to Judge Osteen and he turned you down. Yes, he did. Now, as we pointed out in our brief, a number of other district courts have gone the other way. And we don't have any guidance or informed opinion from other circuits. Apparently, because a whole lot of district judges are going the other way. And so the cases aren't coming. But again, it's our contention that Judge Osteen's ruling should be vacated, the case should be remanded. Thank you. Thank you, Mr. Planky. Mr. Hamilton, what would you like to add to that? Thank you, Your Honor. May it please the Court, Robert Hamilton for the United States. Your Honor, I would like to kind of address two things. One is, Dillon is important because it provides a sequence for the district court to proceed in evaluating 3582. It stresses that the guidelines are binding and specifically refers the district court to 1B1C, 1B110.C. Now, obviously, at the time Dillon was published, the 2014 amendment had not come into play yet. But it's still very important and instructive that Dillon tells us to look first to the guidelines, and specifically to 1B1.10, to determine eligibility. And the fact that the guidelines now have changed and have eliminated the need to look at 5G1.1 is very important because that was not the landscape when Hood was evaluated by the court. In fact, Hood was two amendments ago. Hood focused on the 2007 amendment. Now we have the 2011 and the 2014 amendment. So Hood, at various times, makes allusions to the fact that 1B1.10 was not amended when the 2007 amendment was issued. Well, it has been now. Additionally, Hood talked about 5G1.1 as a limiting factor. So clearly, Hood was looking at a situation that is different than we have today. Let me ask you this. I hate to throw you off, but I want to change subjects a little bit. Let's suppose Williams came up to be sentenced today. The amendment is in effect. Would the mandatory minimum still apply to him, based on the quantity of drugs? He would still have a mandatory minimum, yes. He would still start out at 240 months. That would be his sentencing range. 240 months, his guideline sentence. Not his range, because of 1B1.10c, we talk about range as we're talking about the guidelines. And the sentencing guidelines have been changed. All right, but he still would be subject to the mandatory minimum. He would be, yes, absolutely. And what is the only way, under the circumstances of his case, that he could get a reduction from that mandatory minimum? Which happened here, which is the motion under 3553A. Substantial assistance. Yes, sir. He helped the government. Yes, sir. And you all tried to help him. Yes, a motion was filed on his behalf. So he would still go through the same analysis. The sentencing judge would still go through the same analysis to determine what his sentence should be. Except the calculus as to what a range is would be different. But, of course, he got the mandatory minimum. Yes. That's where he's going to start from. In this case, it would be, yes. And then he'll evaluate the value of his substantial assistance in determining how far from that mandatory minimum to go down. Yes. And what is, I think, important, Your Honor, is that when a 3582 matter is being considered by the court, for instance, if a court had initially granted three points acceptance, which is one of those points is made by a government motion, when the court evaluates a 3582, the defendant still gets credit for those three points. So we would argue that the same logic applies to a 3553 e-motion, unless there's been sort of intervening misconduct in prison. But the change in the quantities is not going to affect the judge's decision as to how far to depart from the mandatory minimum. I don't know that, Your Honor. I don't know. Typically, a motion for substantial assistance is made percentage in our district. So I don't know. Obviously, a percentage of a higher number is a larger reduction. But that's one of the things that the government stressed in its brief, is that 3582 allows the court discretion. Once it determines that eligibility, the court has discretion to reach a just result. And what we're arguing here is not that Judge Osteen should have done a certain sentence. Really, the fact that the eligibility is there, that the district courts seem to have two concerns. One is Hood. And the second is that the issue about a sentencing guideline cannot trump a congressional statute. And there's no question it can't. But we have two very important statutes at play here. We have 3582c-2, which tells us go to the guidelines. And we have 3553e, which allows the court, when fashioning a sentence, which we would submit that 3582 can result in a new sentence. It's not a new sentencing proceeding, clearly. Dylan made that very clear. But the court, in applying 3553e, does have the discretion, if it so chooses, to go beneath the minimum mandatory. So we believe that the district court was not just relying on a sentencing guideline to trump a congressional statute, but it actually has two statutes, 3582c and 3553e, which allow the court, in its discretion, to depart downward if it wishes to in the 3582 proceeding. Your Honor, the government has a strong interest when applying 3582 to cooperators. Many of these people do so at their peril. So the government's here today to ask the court to consider the fact that, under Dylan, that this defendant is eligible, and that we would request that the court remand the case back to the district court. And with what restrictions? Let's suppose we say, okay, re-sentence him. We ran for re-sentencing. The judge is going to start out at mandatory minimum. He's going to evaluate the substantial assistance. And what other restrictions would you have us, do you believe he has to be put under? Your Honor, I think that Dylan is very important. It provides, it says at the first step, the court must look at the sentencing guidelines. So we would ask that any instructions track the language of the Supreme Court, which says, kind of gives a sequence for the district court when trying to determine how to evaluate a 3582 in particular. So in evaluating the substantial assistance, the judge should look at the quantity of drugs he got caught with? No, Your Honor, I'm just saying that he should look first at the guidelines which state that under 5G1.1, the court is no longer restricted by trying to determine that initial guideline range. Because what 5G1.1 says is if in cases of substantial assistance motions, the court is not limited in trying to determine the sentencing range by the mandatory minimum. So really only asking the court to remand with instructions to follow the 2014 amendment, and in a fashion that was very well laid out in Dylan. And say that Hood doesn't control it? Your Honor, I just don't think that Hood is relevant now on a 2014. I'm surprised neither of you all mentioned the Goins case. You all, the public defender in you, you haven't talked about the Goins case, which preceded Hood, but Judge Wilkins said that the sentencing commission could resolve a split in the circuits,  Your Honor, I did not cite the Goins case in the brief. It was a firearms case, but I think it could be very relevant to what you're saying, Your Honor. It is with the power of the commission. These clarifying amendments or hybrid amendments and what the impact of those are. Yeah, clearly a clarifying amendment changes the factual structure that a court is looking at. And simply the landscape of what is the guidelines today is far removed from what it was when the Hood court... An amendment 780 you claim was a clarifying amendment? Yes, I believe it is, Your Honor. Didn't Hood discuss Goins and distinguish it? Your Honor, I'm not calling that passage right now. Thank you. Okay, thank you, Mr. Townsend. Mr. Adams, kind of got double teamed, but we appreciate your agreeing. For the benefit of the audience, this is not a normal appeal. Usually those two guys are sitting at different tables, but because they agree, amicus was appointed to represent the judge because both of them believe the judge was wrong. And it seems like we ought to have somebody saying the judge is right. So that's why these lawyers were appointed to, in effect, represent the judge and argue the judge's point of view. So that's what we're going to hear now. May it please the Court. And it is a great privilege to serve as a court appointed amicus in defense of the judgment below. The question before the Court is actually relatively clear. If United States v. Hood remains good law, then it controls the outcome of this case, and the district judge must be affirmed. And Hood absolutely remains good law. It interpreted a statute that has not been amended, 3582C2. The intervening Supreme Court decision, particularly Freeman, confirms exactly what this Court said in Hood, that the phrase based on has real teeth and does work in determining statutory eligibility. And, of course, the Sentencing Guidelines Amendment, Amendment 780, does not touch that statute, and it doesn't affect the application of Hood and its application to the facts of this case. Well, what about Goins? It seems to say that it does. Your Honor, I don't think that Goins, which was decided before Hood, actually does impact the outcome of this case. I think one of the reasons I felt like we were ships passing in the night in the briefing, or three ships passing in the night in the briefing, and the reason is this important distinction. There are two steps that are required for a defendant to receive a reduction under 3582C2. And the first is the requirement that the prison term they are currently sentencing is based on a sentence, a guideline range that has subsequently been reduced. In other briefs in this circuit, the government has called that statutory eligibility. It's only if that is satisfied that you then look to, if there's going to be a sentence reduction, the phrase in the statute is that such reduction be consistent with the guideline statement. Hood only dealt with that first question based on the statutory eligibility. And Hood's holding is eminently logical. Where the statutory mandatory minimum exceeds the entire guideline range. You cannot say that a district judge based the sentencing decision on that guideline range. Indeed, the sentencing judge is forbidden from basing their decision on that guideline range. By Congress. Congress has said you cannot consider that guideline range. And of course, as this court said in Hood, the sentencing commission has no authority to... How come the mandatory minimum became the guideline range? It does. I think you don't need 5G 1.1 to tell you that. It's the way the sentencing commission puts that into force. Pursuant to the guidelines. Pursuant to the guidelines, the mandatory minimum used to be the guideline range. That's exactly right. And then 780 changed that. Actually, Your Honor, that's a great point and I'd like to address it. I actually don't think 780 does change that at all. If you read the amendment, let's talk about Amendment 780 and what it does. The operative language of Amendment 780 says this. The amended guideline range shall be determined without regard to 5G 1.1. It doesn't say when you look back in time to determine what the prison sentence he's currently serving is based on, you should ignore the statutory mandatory minimum. I would submit to you that what Amendment 780 does is once you have determined that a prisoner is statutorily eligible for a reduction, it eliminates the mandatory minimum and the new, as it's phrased, the amended guideline range. And not only is that, I think, textually right, it comports with, if you read 1B 1.10 in its entirety, it comports with the whole structure. The very first application, the very first application note in 1B 1.10 says this. No reduction is warranted if the amendment is not applicable to the defendant because of a statutory mandatory minimum. So it's consistent inside the sentencing guidelines that if you don't meet that initial statutory eligibility, then you don't even get to the question of what the amended guideline range would be. What about substantial assistance? Based on your argument, a cooperator who commits the same crime as a non-cooperator are now in the same position. In the context of a 3582 where that one cooperator had a statutory mandatory minimum above the guideline range, that's correct, Your Honor. I think that is true. Which undermines the purpose of the guideline, which is to give the cooperators a break. Well, it does give cooperators a break. What it does, though, is it limits the statutory eligibility for those who, for whatever reason, their statutory mandatory minimum was above their guideline range. They simply aren't statutorily eligible for the reduction. So the worst offenders who have mandatory minimums should just not bother cooperating. No, Your Honor, I don't think that. You said they're in the same position. I don't think that's right, Your Honor. I think if they have all the incentive in the world to cooperate because their initial sentencing, they'll receive a huge reduction for being a cooperator. We're talking about the narrow situation of a retroactive amendment in the guidelines and whether they have availability to receive that benefit. So this is not eliminating the benefit for being a cooperator. The benefit for being a cooperator is huge if you have a large statutory mandatory minimum, and that remains. Is it true that under this scheme, as I would submit clearly laid out, that the benefit to someone with a mandatory minimum that exceeds the range is diminished in this context of a retroactive amendment of the guideline range? Yes. Does it make sense that maybe Congress thought this is our prerogative, and when we think someone is so bad that they have that big of a mandatory minimum, we're not going to let them get the benefit of a retroactive amendment to the guideline range? It may not be the best policy in the world, but it's not completely out of the realm of possibility. So I would also just note that the Supreme Court's decision in Freeman, I think, actually supports our view. I was surprised that the government and the defendants relied on it so much. Which decision? There's a lot of opinions. There are a lot of decisions. Which one are you talking about? Actually, I'll go with all of them, but let me pick for you. I think you've got the four justice plurality, then you have Justice Sotomayor, then you have the dissenters. What you can tell from all those opinions is there are at least five, at least five justices, who will tell you based on mean something, and we need to know that the district judge actually based the initial sentence on the guidelines range. And that's your dissenters, and that's Justice Sotomayor who concurred on the narrow view and didn't buy into the just C1C plea. It's out there. The judge probably considered it. She demanded, I want to see that the judge actually based the decision on the guideline range. And so, at least five. And I would submit, Your Honor, in the context of a C1C plea, the idea that here, where a statute actually forbids a district judge to base their decision on the guideline range, this is even further afield from that. So, to my view, the Freeman court actually supports this court's decision in Hood that based on mean something, and that that statutory eligibility is a critical requirement to, at the threshold, determine if a defendant can receive the benefit of the subsequent reduction in the guideline range. If the court doesn't have any further questions, we respectfully request that the district court be affirmed. Thank you, Mr. Adams. Mr. Planky. Thank you, Your Honor. In this brief time remaining, I just wanted to focus really on the mechanics and practicalities of substantial assistance departure decisions in cases where there's a mandatory minimum. A court, a district court is not forbidden from even taking into account what the guidelines say. It may be constrained by a mandatory minimum, but it's not forbidden from recognizing that the guidelines may be driven by drug amounts, or the guidelines may be driven by leadership role, or by presence of weapons, or even by obstructive conduct. And those are still legitimate factors for a district court to have in mind as it weighs culpability and the value of assistance. The district court doesn't have to follow the government's percentage recommendation. It can vary from that. In some districts, it's not a percentage recommendation at all. It's calculated in terms of offense levels. Substantial assistance motions are made that way and granted that way. But it's all part of what the district court can consider, even if there is still a binding mandatory minimum there. For example, if a person has a particular guideline range, even if that guideline range has been trumped by a mandatory minimum, if that guideline range is driven by things such as the presence of weapons, a leadership role, and obstructive conduct, the district court would be perfectly free to say, well, I have a mandatory minimum that applies, but as I weigh culpability and as I weigh how much credit a person should get for assistance, I can take those other things into account. Have you had any cases where a judge has ever done that? I have had cases where the court has said or has mentioned the fact that a person, for example, was in a better position to cooperate because of the particular role they played in a conspiracy or felt more free to cooperate because they were the big tough ones. They were the enforcers. And so those are factors that a court can take into account. They're not forbidden. They're not irrelevant, even when there is the mandatory minimum. And I would submit that that is an important thing to take into account, and it's different from what Amicus has argued to the court. Again, it's simply our position that Hood has been overtaken by intervening changes in the law. It's a little bit different from Goins because in Goins, the clarifying amendment had to do with the guideline itself that the court had applied as opposed to the instructions in 1B1.10 about how to apply retroactive amendments. But we recognize the court's interest in the Goins case as well. But it is a little bit different here because it's a change in a different part of the guidelines. But again, the intervening changes in the law simply have undermined for today's purposes, for this case's purposes, the force of Hood. And we'd ask that the district court's opinion be vacated. Thank you. Thank you, Mr. Flankey. We'll come down to Greek Council and then go into our next case.
judges: William B. Traxler, Jr., Robert B. King, Stephanie D. Thacker